## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| J & M SALES INC., *et al.*, | ) Case No. 18-11801 (JTD) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |
| | ) |
| | ) |
| GEORGE L. MILLER, in his capacity as | ) |
| Chapter 7 Trustee for the jointly | ) |
| Administered bankruptcy estates of J&M | ) |
| Sales Inc., *et al.*, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. No. 20-50775 (JTD) |
| | ) |
| MICHAEL FALLAS, Individually and | ) |
| As Trustee of the Michael Fallas Living | ) |
| Trust dated 1/19/05, *et al.*, | ) **Re: D.I. Nos. 313, 320, 345, 347, 350, 351,** |
| | ) **352, 353, 354, 355, 357, 360, 361, 363, 365,** |
| Defendants. | ) **367, 369, 370, 372, 373, 375, 378** |

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

This adversary proceeding began more than two years ago, with a ninety-five-page

complaint that included eleven counts asserted against 156 defendants (the "**Original**

**Complaint**").[1]  In it, the Trustee sought to avoid (a) the Debtors' assumption of $46 million in

liabilities from the acquisition of a competitor, Conway Stores, Inc. ("**Conway**") (the "**Conway**

**Acquisition**"); (b) avoid and recover payments made by Debtors to Conway's creditors; (c)

avoid as fraudulent transfers nearly $67 million in rent payments made by Debtors to special

---

[1] D.I. 1.

purpose entities owned by insiders; (d) avoid other alleged fraudulent transfers made to insiders; and (e) recover damages for alleged breaches of fiduciary duty, conspiracy, and corporate waste.

Several groups of defendants filed motions to dismiss the Original Complaint and on August 20, 2021, I issued an Opinion and Order (the "**MTD Opinion**"), that granted the motions in part and denied them in part.[2]  Specifically, I dismissed Counts I, III, IV, V, VII, and X of the Original Complaint with leave to amend certain portions of those claims, and denied the motions as to Counts II, VI, VIII, IX and XI in their entirety. Relevant to the issues before me now, leave was granted to amend the constructive fraudulent transfer claims in Counts I and IV to the extent the Trustee failed to allege a lack of reasonably equivalent value.

The Trustee subsequently filed his First Amended Complaint ("**FAC**").[3]  Though no redline comparing the FAC to the Original Complaint was filed, the Trustee later informed the Court and the parties that the only changes in the FAC were the addition of 12 new paragraphs seeking to address the previous pleading deficiencies with regard to Counts I and IV.[4]

In response, nineteen new motions to dismiss were filed (collectively the "**Motions**").[5] Having considered the parties' briefing on the Motions and, for the reasons set forth below, the Motions are denied in part and granted in part.

---

[2] D.I. 306.

[3] D.I. 313.  The Trustee also filed a Motion for Leave to file a Second Amended Complaint seeking to address the counts of the Original Complaint that I dismissed without leave to amend.  D.I. 314.  That motion was denied.  D.I. 345 (Memorandum Opinion and Order).  The FAC is therefore the operative complaint.

[4] D.I. 381 (Trustee's Opposition Brief) at 2, 8-9.

[5] Moving Defendants include: (1) Rosenthal & Rosenthal, Inc., Baby Vision, Inc., Skiva International, Inc. d/b/a Trendset Originals, JCS Apparel Group, Inc., Briara Trading Co. (the "**Rosenthal Defendants**") [D.I. 346]; (2) "**Blue Star Defendants**" (as defined in D.I. 347, Exhibit 1); (3) The Timing, Inc., d/b/a La Vie 98 [D.I. 350]; (4) Wicked Fashions, Inc. [D.I. 351]; (5) Poetry Corporation [D.I. 352]; (6) Panties Plus, Inc. [D.I. 353]; (7) Active USA, Inc. [D.I. 354]; (8) Consensus Securities LLC and Consensus Advisory Services LLC (the "**Consensus Defendants**") [D.I. 355]; (9) KC Exclusive Inc. d/b/a/ Zenana [D.I. 361]; (10) LT Apparel Group [D.I. 360]; (11) Feinberg Realty Associates, L.P. and Leonard Feinberg Inc. (the "**Feinberg Defendants**") [D.I. 363]; (12) Reich Brothers, LLC [D.I. 365]; (13) Coface North America, Inc. [D.I. 369]; (14) Julius Young Hosiery, Inc. [D.I. 370]; (15) CHD Home

## II.    JURISDICTION & VENUE

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. § 1409(a).

## III.    BACKGROUND[6]

For more than half a century, the Debtors operated retail stores offering clothing, shoes, toys, household items, and other discount merchandise.[7]  The Original Complaint alleges that the Debtors' owners, Michael Fallas and his wife Ilanit Fallas (collectively the "**Fallases**") operated and controlled a vast enterprise of entities that functioned as the alter-egos of the Debtors and used the Debtors to sustain the enterprise and enrich the Fallas family at the Debtors' expense.

According to the allegations in the FAC, much of the Debtors' financial trouble began following their acquisition of a failing competitor, Conway, in 2014.  The Conway Acquisition occurred in two phases.  Phase 1 consisted of Debtor Pazzo FNB's purchase of First Niagara Commercial Finance, Inc.'s right, title, and interest in an existing loan to Conway and an inventory liquidation sale.[8]  In Phase II of the acquisition, certain Debtors, Southern Island Stores, LLC ("**Southern Island**") and Southern Island Retail Stores, LLC ("**SI Retail**") purchased Conway's assets for approximately $45 million pursuant to an Asset Purchase

---

Textiles LLC [D.I. 372]; (16) Middlegate Factors, LLC [D.I. 373] (the above-named Defendants together the "**Conway Creditors and Factor Defendants**"); (17) Morris Cohen, Abe M. Cohen, and Jeffrey Cohen (collectively the "**Cohens**") along with the "**Conway Entities**" (as defined in D.I. 358) (together with the Cohens, the "**Conway Sellers**") [D.I. 357]; (18) Michael Fallas, Ilanit Fallas (together the "**Fallases**"), and the "**Fallas SPEs**" (as defined in the FAC) (collectively the "**Fallas Defendants**") [D.I. 367]; (19) KeyBank National Association [D.I. 375].

[6]  As the facts are extensive and mostly irrelevant to resolution of the Motions, I have not repeated them all here.  A full recitation of the facts can be found in the MTD Opinion, D.I. 306.

[7] FAC ¶ 183.

[8] FAC ¶¶ 228-233.

Agreement (the "**Conway APA**").[9]  While the Debtors estimated the value of the consideration received from the Conway Acquisition to equal roughly $45 million, the Trustee alleges that the true value Southern Island and SI Retail received in connection with the Conway Acquisition was only $6.3 million and that Southern Island and SI Retail "assumed liabilities to third-parties which represented a significant portion of Conway's debt, in the amount of more than $45 million.[10]

Prior to the Conway Acquisition's closing, Conway charged its advisory firm, Heritage Equity Partners, with issuing settlement offers to Conway Creditors.[11]  The resulting settlement agreements were between each accepting Conway Creditor and Conway and Metro Buying Group LLC, both Conway entities.  The settlement agreements were then assigned to non-debtor, CPD 18 Corp. ("**CPD 18**") which agreed to pay the amounts owed, and Debtor National Stores as guarantors.  Although Southern Island and SI Retail were the entities that assumed the Conway liabilities under the APA, they were not parties to the settlement agreements.[12]

In early 2016, Debtors tried to further reduce and re-settle the remaining outstanding balances owed to the Conway Creditors.[13]  While some Conway Creditors agreed to a reduction, others refused.[14]  In some instances, pre-petition lawsuits were filed against the Debtors, and additional settlements reached to resolve them.

## IV.    LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of the factual allegations in the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). To survive a motion to dismiss,

---

[9] FAC ¶ 238.
[10] FAC ¶ 242
[11] FAC at ¶274. FAC at ¶ 273.
[12] FAC at ¶ 274.
[13] FAC at ¶ 277.
[14] FAC at ¶ 277.

the complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The court must draw all reasonable inferences in favor of the plaintiff. *See, e.g., Alpizar-Fallas v. Favero,* 908 F.3d 910, 914 (3d Cir. 2018). On a motion to dismiss, "[t]he defendant bears the burden to show that the plaintiff's claims are not plausible." *In re LSC Wind Down, LLC*, 610 B.R. 779, 783 (Bankr. D. Del. 2020).

In weighing a motion to dismiss, the court should undergo a three-part analysis. "First, the court must take note of the elements needed for a plaintiff to state a claim." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citing *Iqbal*, 556 U.S. at 675). Second, the court must separate the factual and legal elements of the claim, accepting all of the complaint's well-pled facts as true and disregarding any legal conclusions. *Id.*; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 679). Third, the court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.  *Santiago*, 629 F.3d at 130.

## V.    DISCUSSION

### A.  <u>Counts I and IV (Constructive Fraud)</u> [15]

In Count I of the Amended Complaint, the Trustee seeks to avoid and recover more than $13 million in transfers made to the Conway Creditors and Factor Defendants following the Conway Acquisition.  In the MTD Opinion, I dismissed these claims on the ground that the

---

[15] While the Trustee included both claims for actual and constructive fraud in Count I, all of the Trustee's claims for actual fraud were dismissed in the MTD Opinion and the Trustee has not amended the complaint to address the factual deficiencies.

Trustee failed to adequately plead that the Debtors did not receive reasonably equivalent value. Specifically, I held that the Trustee's reliance on the insufficiency of the consideration received by the Debtors in the Conway Acquisition to establish that the payments received by the Conway Creditors and Factor Defendants also lacked reasonably equivalent value was inadequate:

> The Trustee is attempting to paint the picture that because the Conway Acquisition was for less than reasonably equivalent value – a contention I will assume arguendo – each of the assumed liabilities was also for less than reasonably equivalent value. However, without something more from the Trustee, this is an untenable position. For example, the Trustee admitted that when Conway liquidated its inventory in anticipation of the merger the Debtors "agreed to the sharing of the liquidation proceeds." The Debtors received $4.7 million from this liquidation, yet the Trustee makes no attempt to explain whether this liquidation itself was for less than reasonably equivalent value or whether the $4.7 million covers any of the product at issue in the fraudulent transfers. Additionally, the Trustee admits that the Debtors received $572,349 in property and equipment and $1,044,123 in deposits from Conway upon closing of the merger.  While the Trustee contends this is less than the value of *all* assumed debts, he makes no attempt to compare it to the value of the specific transfers at issue.

> In short, even accepting all the Trustee's pleaded facts, the Trustee has entirely failed to allege that the Debtors did not receive reasonably equivalent value for the specific Conway Creditor and Factor Defendant payments at issue.[16]

For this reason, I dismissed the claims with leave to replead.

The Trustee repleaded the claims, adding allegations concerning Southern Island's payment to Conway Creditors and Factor Defendants of more than the amounts it had agreed to assume under the Conway APA.[17]  Specifically, he alleges that:

> [U]nder the terms of the APA, Southern Island agreed to assume, at most, only 25% of any outstanding Conway debt (provided certain conditions were met), but in actuality often paid much more than that to the Conway Creditors and Factor Defendants.

*       *       *

---

[16] MTD Opinion at 30-31.
[17] FAC ¶¶280-90 and Ex. C.

6

Notwithstanding these contractual provisions, in numerous instances, Southern Island assumed and paid well above 25% of the amount Conway owed.

*     *     *

As a representative example, according to Settlement Agreement and Assignment documents dated March 31, 2014, Conway purportedly owed $955,941.82 to One Step Up Ltd. Conway purportedly settled this claim for $621,362.18—or 65% of the total owed—which CPD 18 Corp. agreed to pay in the Assignment. Ultimately, Debtor Southern Island ended up paying a total of $454,802.59 to One Step Up Ltd.—approximately 48% of the total Conway had owed— as set forth in Exhibit A hereto.  Southern Island did not receive reasonably equivalent value for paying any of that amount, and especially not any amount paid in excess of the contractually obligated 25% stated in Section 4.3 of the APA.

The example involving One Step Up Ltd. set forth above is typical of the payments made to other Conway Creditors and Factor Defendants, which frequently exceeded 25% of the original debt that had been owed by Conway.

EXHIBIT C attached hereto sets forth the percentage of the Conway Creditors and Factor Defendants obligations assumed by Southern Island and National Stores. The percentages assumed in excess of 25% were in violation of Section 4.3 of the APA and effectively increased the Purchase Price in the Conway APA for which Southern Island received no value. [18]

The Conway Creditors and Factor Defendants again moved to dismiss, arguing that the amended allegations still fail to properly allege a lack of reasonably equivalent value.

To state a claim for constructive fraudulent transfer, a pleading must allege that the transfer was made "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation." 6 Del. C. § 1304(a)(2). "[A] party receives reasonably equivalent value for what it gives up if it gets 'roughly the value it gave.'" *VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 631 (3d Cir. 2007).

The new allegations in the FAC do sufficiently allege that Debtors did not receive reasonably equivalent value, but only for a portion of the payments made to each creditor.  For

---

[18] *Id.*

payments in excess of the 25% of Conway's total debt to each creditor that Southern Island agreed to assume, the Trustee has alleged that neither it, nor any of the Debtors, received anything in return.  This is sufficient at the motion to dismiss stage.

However, the FAC does not include any additional allegations regarding the basis for the Trustee's assertion that the payments for the first 25% of total original debt to each creditor – that which it agreed to assume under the APA – lacked reasonably equivalent value.  The FAC offers no new allegations regarding why the value the Debtors received in satisfaction of the first 25% of debt that it assumed with respect to each creditor was not reasonably equivalent, instead relying on the same allegations regarding the lack of value received in the Conway Acquisition generally.  As I stated in the MTD Opinion, that is not sufficient to establish that the Debtors did not receive reasonably equivalent value for the specific creditor payments at issue.

While several of the moving defendants make compelling arguments regarding the impact that settlement agreements may have had on the Trustee's ultimate ability to avoid the transfers in question, most of these arguments only create questions of fact that cannot be resolved at this stage.  For example, though several defendants argue that they entered into settlement agreements with entities that may properly be considered alter egos of the entity that made the transfers or that may have created obligations independent of those contained in the Conway APA, resolution of those issues requires the consideration of evidence beyond what is presently before me.

Some of the moving defendants also argue that the FAC fails to allege reasonably equivalent value because the Trustee is not challenging the validity of the underlying debt to the creditors.  Consequently, they argue, all the payments made were in satisfaction of valid

8

antecedent debts, reduced the Debtors' obligations accordingly, and therefore constitute reasonably equivalent value as a matter of law.  I disagree.

While some courts do apply a *per se* test for reasonably equivalent value, *see, e.g.*, *In re AppliedTheory Corp.*, 330 B.R. 362, 364 (S.D.N.Y. 2005),[19] the Third Circuit utilizes a totality of the circumstances test when assessing whether reasonably equivalent value was given.  This test is "inherently fact driven."  *Stanziale v. Khan (In re Evergreen Energy, Inc.)*, 546 B.R. 549, 563 n.37 (Bankr. D. Del. 2016) (citing *Argus Mgmt. Grp. v. Chanin Capital Partners, LLC (In re CVEO Corp.)*, 320 B.R. 258, 264-65 (Bankr. D.Del. 2005) (reasonably equivalent value was not demonstrated as a matter of law solely because the transfer paid an antecedent debt).  *See also In re Charys Hldg. Co.*, 443 B.R. 628, 638 (Bankr. D. Del. 2010) ("[R]easonably equivalent value is a fact intensive determination that typically requires testing through the discovery process.").

Here, with the exception discussed above, the balance of the allegations in the FAC are sufficient to withstand a motion to dismiss with respect to a lack of reasonably equivalent value. The Motions are therefore both granted in part (the Trustee's claims to avoid transfers that constitute 25% or less of Conway's original debt to each creditor are dismissed) and denied in part (the Trustee may pursue claims to avoid transfers that constitute more than 25% of Conway's original debt to each creditor) with respect to Counts I and IV of the FAC.[20]

---

[19] Notably, however, the *AppliedTheory* Court expressly stated that this rule "only pertains to circumstances where the antecedent debt was an actual cash loan."  *In re Applied Theory Corp.*, 330 B.R. at 363-64.

[20] The single exception is the motion filed by KC Exclusive, who was only paid 25% of the original amount it was owed by Conway.  KC Exclusive's motion with respect to the claims for constructive fraud is therefore granted.

### B. **Count II (Constructive Fraud – Dividends)**

The Fallases moved the dismiss the constructive fraudulent transfer claims in Counts II

and III of the FAC to the extent the alleged transfers occurred before August 16, 2014,[21] arguing

that all such transfers were previously dismissed by the MTD Opinion.  While the Fallases are

correct with respect to the rent payments that are the subject of Count III (discussed in Section C

below), they are incorrect regarding the dividends that are the subject of Count II.  However, as

the MTD Opinion is admittedly unclear on this point, I will clarify.

With respect to the transfers that are the subject of Count II, there is a factual dispute

about when the transfers actually occurred that precludes dismissal of the claims at this stage of

the case.  This was noted in a footnote on page 31 of the MTD Opinion:

> It is unclear from the papers exactly when these dividend payments occurred. The
> Trustee states that "upon information and belief" three dividends were paid prior
> to July 2014. However, the Fallases appear to concede that the dividends were
> made in January 2015, when the board of directors approved the dividends.
> Opening Br. Support Fallas Defs.' Mot. to Dismiss ("Fallas Reply") at 17 [D.I.
> 56] ("the Trustee has not shown that Debtors J&M Sales and FP Stores were
> insolvent or rendered insolvent in January 2015 when the J&M Sales Dividends
> and FP Stores Dividends were made"). This is a crucial difference as the statute of
> repose discussed above would potentially affect my jurisdiction over these claims.
> However, since it has not been made clear to me what the actual date of transfer
> is, I will not assume a particular date and apply the statute of repose *sua sponte*.
> To be clear, whether or not the dividend payments are ultimately subject to the
> statute of repose, the actual fraudulent transfer claims will remain unaffected.[22]

However, just a few pages before, on pages 26-27, I stated that "the claims for constructive fraud

in Count I that occurred outside the limitations period are dismissed, as are the claims for

---

[21] The MTD Opinion inadvertently stated that the petition date was August 16, 2018, when it was actually
August 6, 2018.  As the bar date under the statute of repose and statute of limitations was calculated from
the petition date, it was therefore incorrectly determined to be August 16, 2014, when the proper date
should be August 6, 2014.  All references to August 16, 2014, both herein and in the MTD Opinion
should be interpreted to mean August 6, 2014.

[22] D.I. 306 at 31 n.103.

constructive fraud set forth in Counts II and III that occurred prior to August [6], 2014."[23]  Given

the footnote's placement in a separate section later in the MTD Opinion, it does create an

inconsistency.  The footnote should have been appended to the conclusion of the sentence on

page 27, where it would have made clear that the claims in Count II could not be dismissed as

time-barred at this time.  Although the chart contained in Appendix A to the MTD Opinion does

clearly state that the motions to dismiss the constructive fraud claims contained in Count II were

denied, the Fallases' confusion on this issue is understandable.  To be clear, the disposition of the

Fallases' first motion to dismiss with respect to Counts II and III was as follows:

| | |
|---|---|
| Count II (Constructive Fraud) | Denied |
| Count II (Actual Fraud) | Denied |
| Count III (Constructive Fraud) | Granted with respect to transfers that occurred prior to August 6, 2014<br><br>Denied with respect to transfer that occurred after August 6, 2014 |
| Count III (Actual Fraud) | Denied. |

Accordingly, the Fallases' second motion to dismiss is denied with respect to Count II and is

moot as to Count III, since those claims were previously dismissed.

### C.  Trustee's Inclusion of Previously Dismissed Claims in FAC

The Original Complaint was met with thirteen motions to dismiss, made by dozens of

defendants, which I resolved in a lengthy opinion complete with a multi-page chart setting forth

the disposition of each claim with respect to each defendant group.  Even though this complex

ruling rendered several parts of the Original Complaint inoperative and effectively dismissed a

number of parties from the case, the Trustee filed an amended complaint that appeared on its

---

[23] D.I. 306 at 26-27.

face to be nearly identical to the first one – with neither footnote nor blackline comparison

indicating what changes had been made to the 238-page document.  Left with the impression that

the Trustee was continuing to press claims against them, several parties who had believed

themselves to be dismissed from the proceeding were compelled to once again file motions to

dismiss. The Trustee later revealed, in his brief in opposition to the Motions, that he is no longer

pressing the dismissed claims, but included them only for purposes of preserving them for

appeal.  One of the moving defendants argues that the Trustee's actions in reasserting previously

dismissed claims rise to the level of civil contempt, and he should be sanctioned accordingly.

While I do not agree that the Trustee's conduct constitutes civil contempt,[24] I do find the actions

of both the Trustee and his counsel here to be concerning enough to warrant discussion.

In defense of his decision to leave the previously dismissed claims in the FAC, the

Trustee cites to the Third Circuit's opinion in *United States ex rel. Atkinson v. Pa. Shipbuilding

Co.* and the uncertainty created by the "general rule that an amended complaint ordinarily

supersedes the original and renders it of no legal effect[.]"  *United States ex rel. Atkinson v. Pa.

Shipbuilding Co.*, 473 F.3d 506, 516 n.16 (3d Cir. 2007) (quoting *International Controls Corp. v.

Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)).  Specifically, the Trustee relies on the *Atkinson*

Court's statement that where it would not be futile to replead dismissed claims "but those claims

are nevertheless omitted from an amended pleading, the right to challenge the basis for dismissal

on appeal is waived." *Id.* at 516.  But as the Court goes on to explain, the failure to include

claims in an amended pleading only results in a waiver of the right to challenge a dismissal

---

[24] A party seeking sanctions for civil contempt must establish by clear and convincing evidence that: (1) a valid court order existed; (2) the nonmovant had knowledge of the order; (3) the nonmovant disobeyed the order. *EHT US1, Inc. v. EHT Asset Mgmt., LLC*, 633 B.R. 223, 233 (Bankr. D. Del. 2021).  Had the Trustee reasserted the claims here with the intent to actually continue to pursue them despite the Court's order to the contrary, a contempt order might be appropriate.  But, as discussed herein, this is not what has occurred here.  KC Exclusive's motion for sanctions for civil contempt is therefore denied.

where a plaintiff does not otherwise indicate his intention to stand on the dismissed claims. *Id.* at

516. Far from requiring a plaintiff to keep all previously dismissed matter in an amended

pleading, the *Atkinson* decision holds only that a plaintiff must do <u>something</u> when filing an

amended pleading to make it clear that he is not abandoning the dismissed claims:

> If a party omits a claim from an amended complaint that it would not have been
> futile to replead, that party can still preserve the claim for appellate review by
> standing on the dismissed claim despite leaving it out of the amended complaint.
> We do not adopt a rigid requirement as to what a plaintiff must do to stand on a
> dismissed complaint. Adding a section to an amended pleading specifically
> preserving the claim certainly suffices. *Smith v. Nat'l Health Care Serv. of Peoria*,
> 934 F.2d 95, 98 (7th Cir. 1991) (involving case where plaintiff added a
> "Preserved Claims" section to his amended pleading). It would also be acceptable
> for a plaintiff to file a notice with the district court stipulating that he has decided
> to stand on his previous pleading with respect to a claim or party now dropped
> from the otherwise operative pleading.

*United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 517 (3d Cir. 2007).

Here, instead of doing anything that might have conveyed to either the defendants or the

Court that the Trustee was only including the dismissed matter for preservation purposes, and

that he was no longer asserting certain claims or pursuing certain parties, the Trustee simply

refiled the partially dismissed Original Complaint with a few additional paragraphs. In doing so,

he triggered the obligation that every defendant named in the FAC – even those against whom

the Trustee was no longer asserting claims -- file a response to the pleading or risk a default

judgment.

Additionally, in at least one instance, when counsel for defendants reached out to

Trustee's counsel seeking confirmation that claims dismissed in the MTD Opinion were no

longer being asserted against their clients, the responses received included the unhelpful

suggestion that if counsel "thinks certain claims are dismissed as to a particular client he should

leave them be or state that in a FN in his new brief."[25]  This refusal by the Trustee's counsel to either work cooperatively with the defendants or to provide some guidance to both the defendants and the Court regarding the effects of the MTD Opinion and the Trustee's intentions going forward is disappointing to say the least.  This indolence caused at least three defendant groups consisting of dozens of individual defendants, to incur the costs of preparing and filing new motions and briefing, and caused the already overburdened Court to spend its time addressing them, all of which could have been avoided if the Trustee's counsel had taken the necessary steps before filing the FAC to ensure that the record accurately reflected which defendants were still being pursued in the FAC.

My review of the extensive briefing in this case also raises other concerns about the Trustee's diligence in preparing and filing pleadings in this case.  For example, with respect to at least four defendants, the Trustee asserted claims against them even though he admittedly had no information about when the allegedly fraudulent transfers even occurred.[26]  I expect better from the Trustee and counsel in the future.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

The Motions of the Conway Sellers, the Reich Brothers, and KeyBank are **DENIED AS MOOT**, as the claims asserted against these defendants were dismissed by the MTD Opinion;

The Motion of CHD Home Textiles is **GRANTED WITH PREJUDICE;**

The remaining Motions are **DENIED in part and GRANTED in part**, the following claims being dismissed **WITH PREJUDICE**:

---

[25] D.I. 362, Ex. A.

[26] FAC, Ex. A at 60.  Only one of the four defendants listed as subsequent transferees with "to be determined" transfer dates moved to dismiss: CHD Home Textiles.  The Trustee having failed to provide adequate detail about the transfer, the claims against CHD Home are dismissed with prejudice.

| Count I | All claims for actual fraud |
|---|---|
| Count I | All claims for constructive fraud involving transfers that occurred prior to August 6, 2014 |
| Count I | All claims for constructive fraud involving transfers that represent 25% or less of Conway's total original obligation to any Conway Creditor or Factor Defendant |
| Count III | All claims for constructive fraud involving transfers that occurred prior to August 6, 2014 |
| Count IV | All claims for actual fraud *against the Conway Creditors or Factor Defendants* |
| Count IV | All claims for constructive fraud *against the Conway Creditors or Factor Defendants* involving transfers that represent 25% or less of Conway's total original obligation to any Conway Creditor or Factor Defendant |
| Count IV | All claims for constructive fraud involving transfers that occurred prior to August 6, 2016 |
| Count V | All claims against the Conway Sellers, KeyBank, the Conway Creditors and Factor Defendants |
| Count VII | Breach of Duty of Loyalty claim |
| Count X | As against Ilanit Fallas |

The Trustee is directed to submit an amended complaint that accurately reflects the record and includes: (1) only those defendants against whom claims are presently being asserted; (2) only those claims that are presently being asserted including the specific amount of each claim against each individual defendant; and (3) a footnote that indicates which of the dismissed claims are preserved for purposes of appeal.

Dated:  October 6, 2022

JOHN T. DORSEY, U.S.B.J.

15